IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MUNIAUCTION, INC.                     )
          Plaintiff,                  )
                                      )
     v.                               )     Civil Action No.  01-1003
                                      )
THOMSON CORP. and                     )
I-DEAL, LLC,                          )
          Defendants.                 )

MEMORANDUM

Gary L. Lancaster,                          August ⎰⎱, 2006
District Judge

     This  is  an  action  in  patent  infringement.   Plaintiff,
MuniAuction, Inc. alleges that defendants Thomson Corporation and
i-Deal, LLC, have infringed its patent.  Both plaintiff and
defendants operate electronic auctions.  Defendants contend that
their auction system does not infringe plaintiff's patent, and/or
that the patent is invalid.  This case is trial ready.  However,
prior to trial, the court will set forth its claim construction
rulings pursuant to Markman v. Westview Instruments, Inc., 52 F.3d
967 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996).


I.   FACTUAL BACKGROUND

     MuniAuction owns United States Patent No. 6,161,099 (the '099
Patent) entitled Process and Apparatus for Conducting Auctions over
Electronic Networks.  Under this patent, MuniAuction facilitates
auctions  for  fixed  income  financial  instruments,  specifically
municipal  bonds,  through  its  website.   MuniAuction  accuses
defendants  of  infringing its patent by operating their competing

BIDCOMP/PARITY auction system.

We adopted Magistrate Judge Mitchell's report and recommendation by order dated November 14, 2004 denying defendants' motion for summary judgment on the patent infringement claim.[1] In doing so, we rejected defendants' argument that "auction process" should be "limited to the period prior to the end of bid submission" and that "all of the steps required by the claims must take place prior to the time that bids must be submitted." In other words, we found that the patent imposed no temporal restriction on the term "auction process", as asserted by defendants, and that the phrase would be given its ordinary meaning.[2] We further found that the fact finder would need to decide whether defendants are liable for direct or indirect infringement.

After the court entered the summary judgment order, but before the case was referred back to the district court judge, defendants requested a Markman hearing. Following an unsuccessful settlement conference before a different district court judge, the parties appeared at a status conference. At that conference, the parties agreed that the case was trial ready, but disagreed as to whether,

---

[1] We also adopted Magistrate Judge Mitchell's report and recommendation granting defendants' motion for summary judgment on plaintiff's antitrust and Pennsylvania Unfair Sales Act claims.

[2] "Auction process" means "a series of actions taken to sell an item to the highest bidder."

2

and to what extent, claim construction rulings would be needed prior to trial.   Plaintiff alleged that no further claim construction would be needed.  Defendants contended that the court should re-construe those terms already construed in the summary judgment opinion, and construe approximately four additional terms that would be relevant to their defenses at trial.[3]

We informed the parties at the conference that the claim construction on those terms that were part of the summary judgment motion would not be revisited.  However, in recognition that defendants' summary judgment motion did not purport to raise all claim construction issues, we did allow the parties to submit a claims chart, with briefing, for any claims that were still in need of construction.  In preparing the chart, the parties were directed to identify the evidence, both intrinsic and extrinsic, in support of their proposed construction, and identify, in context, why construction of the term was important.

The parties filed an 85 page claim chart, in which they seek construction of 25 claim terms.  For the vast majority of the terms, "non-infringement and invalidity" is the only explanation given as to why the court should construe the term.  For many of

---

[3]  We will interpret defendants' statement to include both invalidity and non-infringement defenses.  Defendants explicitly stated in their summary judgment motion that they would assert other non-infringement defenses, as well as invalidity defenses, at trial.  We will not preclude such defenses based on counsel's comment at the status conference.

the terms, defendants argue, in direct violation of this court's directive, that we should revisit the claim construction made in the context of the summary judgment motion.

## II. LEGAL BACKGROUND

Claim construction is not a simple task.

Claim construction requires a degree of imagination from the court. First, the court must obtain sufficient currency with the technical terms employed to read the patent because the objective of claim construction is to ascertain the meaning that a person of ordinary skill in the art would give to the terms in dispute. Second, the court must travel in time, for the operative time for interpreting the claim terms is the date of the application for the patent.

Thomson Consumer Elecs., Inc. v. Innovatron, S.A., 43 F. Supp. 2d 26, 29 (D.D.C. 1999) (citations omitted). Patent claim construction is a matter of law for the court. Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995), aff'd 517 U.S. 370 (1996). According to the Court of Appeals for the Federal Circuit, "[i]t is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005)(en banc) (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004)). Therefore, we must begin our claim construction analysis with the words of the claim. Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).

4

The words of the claim are generally given their ordinary and customary meaning. Id. at 1582. The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." Phillips, 415 F.3d at 1313. The person of ordinary skill in the art views the claim term in light of the entire intrinsic record. Id. Thus, the claims "must be read in view of the specification", which is the single best guide to determining the meaning of a claim term, and the prosecution history. Markman, 52 F.3d at 979; Phillips, 415 F.3d at 1315; Vitronics, 90 F.3d at 1582.

Claims should be interpreted consistently with the specification, of which that are a part, because the specification provides context for the proper construction of the claims and explains the nature of the patentee's invention. See Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243, 1250 (Fed. Cir. 1998). "'The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.'" Phillips, 415 F.3d at 1316.

However, the Federal Circuit has cautioned against limiting the scope of a claim to a preferred embodiment or specific examples disclosed in the specification. See e.g., Ekchian v. Home Depot, Inc., 104 F.3d 1299, 1303 (Fed. Cir. 1997); Intervet America, Inc.

5

v. Kee-Vet Laboratories, Inc., 887 F.2d 1050, 1053 (Fed. Cir. 1989) ("[L]imitations appearing in the specification will not be read into claims, and . . . interpreting what is meant by a word in a claim 'is not to be confused with adding an extraneous limitation appearing in the specification, which is improper.'") (citation omitted). While the specification may describe very specific embodiments of the invention, we cannot confine the claims to those embodiments. Phillips, 415 F.3d at 1323.

In addition to the specification, "the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." Id. at 1317. The public has a right to rely on statements made by the patent applicant or his attorney during prosecution that define the scope of the claims. See Ekchian, 104 F.3d at 1304.

Therefore, a court must include a review of the patent's specification and prosecution history in its claim construction analysis. Multiform Desiccants, Inc. v. Medzam, Ltd., 133 F.3d 1473, 1477 (Fed. Cir. 1998); Medrad, Inc. v. MRI Devices Corp., 401 F.3d 1313, 1319 (Fed. Cir. 2005). In fact, it is error for a court to issue a claim construction that is divorced from the context of the written description and prosecution history. Nystrom v. Trex Comp., Inc., 424 F.3d 1136, 1144-45 (Fed. Cir. 2005).

While resort to dictionaries and treatises may be helpful, they may not be consulted before the specification and prosecution history in order to define claim terms. Phillips, 415 F.3d at 1318-21; C.R. Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858, 862 (Fed. Cir. 2004). Such extrinsic evidence is less reliable than intrinsic evidence and poses the risk that it will be used to "change the meaning of claims in derogation of the 'indisputable public records consisting of the claims, the specification and the prosecution history,' thereby undermining the public notice function of patents." Phillips, 415 F.3d at 1319 (quoting Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1578 (Fed. Cir. 1995)).

Claim construction is an essential first step to conducting an infringement analysis; however it is not an infringement analysis. The fact that an accused device may contain a claim element that has been construed by the court does not mean the accused device infringes. The accused device must contain every element of a claim, or the substantial equivalent of each element, in order to infringe the patent. If just one claim element or its substantial equivalent is not present in the accused device, then that claim is not infringed. Carroll Touch, Inc. v. Electro Mech. Sys., Inc., 15 F.3d 1573, 1576 (Fed. Cir. 1993); Hormone Research Found., Inc. v. Genentech, Inc., 904 F.2d 1558, 1562 (Fed. Cir. 1990); Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc). Therefore, even if the accused device contains the element of a

7

claim that is being construed by the court, if it does not contain all other elements of the claim, it does not infringe.

## III. DISCUSSION

### A.   Reconsideration of Summary Judgment Claim Construction

Regrettably, the court must address an issue that it had informed the parties would not be considered.  We do so only to clearly, explicitly, and finally resolve the matter so that we do not continue to waste valuable resources on it as trial approaches. Defendants contend that the claim construction analysis applied in the summary judgment opinion is now invalid under Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005).  In short, defendants contend that the court defined the term "auction process" by referring to dictionary definitions, rather than the patent itself, in violation of the "new law" established in Phillips.

Defendants are wrong on two fronts.  First, as a factual matter, the court did not issue a construction divorced from the intrinsic evidence.  Rather, the court carefully reviewed and considered the patent's specification in construing the terms. Finding no support for the strained construction proposed by defendants, or any other specialized construction, in the intrinsic record, the court turned to the ordinary and customary meaning of the terms "auction" and "process" in construing the phrase.

Second, as a legal matter, the court's method of construction

8

does not conflict with the Phillips decision.   In Phillips, the Court of Appeals for the Federal Circuit re-emphasized that the intrinsic record controls a court's claim construction analysis. In doing so, it reaffirmed that treatises and dictionaries could be consulted to explain and define patent terms, but should not be used as a replacement for the intrinsic record.   This has always been the law.   And this is exactly how the court went about construing terms in the summary judgment opinion.

## B.   Claim Construction

### 1.   General Issues

Defendants claim that two issues underlie many of the disputed claim terms: first, whether the "auction process" ends with the deadline for bid submission such that all claimed steps must occur before bids are submitted; and second, whether the bidder's computer must perform the "computing", "submitting", "transmitting", and "communicating" steps.

The first issue is admittedly the same issue decided adversely to defendants in the summary judgment context.   As such, for the reasons discussed immediately above, the court will not address it yet again.

The second issue is also easily disposed of by reading the plain language of the claim.   Sometimes the claim explicitly states that a step must be performed on the bidder's computer, e.g.,

9

"inputting...into said bidder's computer" and "submitting...from said bidder's computer". Other times the claim explicitly states that a step is performed elsewhere, e.g., "communicating...to said issuer's computer" and "displaying, on said issuer's computer". Still other times there is no designation as to the location of a step. For instance, the "automatically computing" step is given no location. This step could be performed on the bidder's computer, where the bid data has been inputted, or, at some other location where the data has been transferred for the purpose of computation. As such, there is no merit to defendants' argument that all steps of Claim 1 must be performed on the bidder's computer.

### 2.   Claim Construction - Claims 1, 14, 20, and 31

We turn now to construction of the allegedly disputed terms. Before doing so, we note that although we accept that it is an unfortunate convention of patent litigation practice to exacerbate the claim construction task, in this case, the process has been particularly abused.     Defendants  originally  contended  that approximately four terms would need to be construed; the claim construction  chart  contains  twenty-five.     Repeatedly,  when defendants cite to intrinsic evidence, the citations do not support the position advanced, and sometimes do not even address the topic at issue.  Moreover, as noted above, defendants, who are the ones seeking construction of these terms, fail to specifically identify

10

the context in which any particular construction of a term is important to the case, as the court explicitly instructed them to do.  The court has looked past these shortcomings and has carefully considered each of defendants' claim construction arguments. Unfortunately, even putting all of this aside, they are largely without merit.

**CLAIM 1:**

As an initial matter, we find that construction of the preamble is necessary.   The preamble describes the components of "an electronic auction system".   The components are used in the steps that comprise the "electronic auctioning process."  The entire claim must be read as a whole.

**TERM #1:** *"electronic auction system"* - Defendants reiterate the temporal limitation argument that they lost on summary judgment. We need not address it again.  This term means: "The equipment and procedure used to sell fixed income financial instruments to the highest bidder using computers."

**TERM #2:** *"issuer"* - The parties agree that this term means: "An entity offering fixed income securities for sale."

**TERM #3:** *"issuer's computer"* - As with most terms asserted by defendants as being in need of construction, this is not a complicated term to construe.  We need not look beyond the claim itself to conclude that defendants' proposed construction is

11

invalid. Although the issuer's computer does perform the act of "displaying" in the process steps, it also performs the step of receiving a message associated with said submitted bid. Therefore, it would be improper to define this term by limiting it to the displaying step, as defendants propose. This phrase means: "A computer used by the Issuer to access an electronic auction."

**TERM #4**: *"bidder's computer"* - Again, there is no reason to define this term by referring to any of the process steps, as defendants propose. Particularly, we find no requirement in the claim that the "computing" step be performed on the Bidder's computer, and therefore, especially, find no support for defendants' attempt to define this term to include the "computing" step. This phrase means: "A computer used by a bidder to access an electronic auction."

**TERM #5**: *"input device"* - Defendants citation to intrinsic evidence does not support their proposed construction, limiting the types of devices that could be used to input data. While the specification gives specific examples of input devices, such as a mouse and a keyboard, there is no indication that the term is limited to those examples. This phrase means: "any input device used to prepare or submit bids."

**TERM #6**: *"located remotely"* - Again, this not a highly technical term, and no special meaning is assigned to it by the intrinsic evidence. In the context of the patent, the bidder's

12

computer and the issuer's computer need only be located in different places. There is nothing in the patent to preclude them from being in the next room, across town, or in different countries. Certainly, defendants have provided no support from the intrinsic record to support their position that the computers must be "far away" from each other. This phrase means: "not in the same location."

**TERM #7**: **"said computers being coupled to at least one electronic network for communicating data messages between said computers"** - The real dispute regarding the meaning of this term is whether the "electronic network" can be a closed, or direct-dial, network, or is limited only to public networks, such as the Internet. Again, defendants have not supported their proposal to require use of the Internet for all steps of the auction process. In fact, the patent explicitly states that it requires that only one step be performed via the Internet. This allows other electronic networks to perform the remaining steps. This phrase means: "said computers being connected to at least one network for communicating data messages between said computers, such connection being at least partially via the Internet."

**TERM #8**: *"data messages"* - Again, this is not a complex technical term, and is assigned no special meaning by the intrinsic record. Defendants' citation to intrinsic evidence does not support their proposed construction to limit the content of the messages to

13

the bid itself.  In the context of the patent, this phrase means: "information associated with an electronic auction in a form suitable for processing by a computer."

**TERM #9**: *"an electronic auctioning process for auctioning fixed income financial instruments"* - Defendants' proposed construction is an admitted restatement of the argument they lost on summary judgment.  We will not revisit that issue.  Based on our earlier constructions, this phrase means: "a process for selling fixed income financial instruments to the highest bidder using computers."

**TERM #10**: *"inputting data associated with at least one bid for at least one fixed income financial instrument into said bidder's computer via said input device"* - Defendants contend that this phrase should be construed to require that data be defined as only "information necessary to calculate an interest cost value" and that such data be stored on the bidder's computer.  We find no support for imposing such limitations on the plain words of this claim phrase. Contrary to defendants' argument, the fact that data is inputted into the bidder's computer, and the bid is submitted, in part, from bidder's computer, does not necessarily imply that the data is stored in the memory of the bidder's computer. As plaintiff correctly notes, the invention contemplates that servers can be used to make calculations and store information.  This phrase means: "putting information, in a form suitable for processing by a computer,  associated with a bid to buy a fixed income financial

14

instrument into a computer used by a bidder to access an electronic auction via any input device used to prepare or submit bids."

**TERM #11**: *"automatically computing at least one interest cost value based at least in part on said inputted data, said automatically computed interest cost value specifying a rate representing borrowing cost associated with said at least one fixed income financial instrument"* - Defendants' contend that this "computing" step must take place on the bidder's computer. As is now typical, the intrinsic evidence to which defendants cite does not support such a strained interpretation. There is simply no requirement in the patent that the software necessary to "compute" be located on the bidder's computer or that because information is typed into a bidder's computer, it must stay there. No special meaning need be assigned to any of the terms in this phrase. We construe it to mean: "calculating, without further action by the user, an interest cost value, representing borrowing cost associated with a original issue fixed income financial instrument, based at least in part on the information put into a bidder's computer in the previous step."

**TERM #12**: *"submitting said bid by transmitting at least some of said inputted data from said bidder's computer over said at least one electronic network"* - Defendants propose in their construction that a bid can be submitted only after an interest cost value has been calculated and only entirely from the bidder's computer. We

15

agree with plaintiff that there is no requirement that a bid can be submitted only after an interest cost value is calculated. Just as we have already dismissed defendants' notion that the "computing" step must be performed on the bidder's computer because information is input there, we find no requirement that this "submitting" step also be based solely on information stored in the bidder's computer. This phrase means: "transmitting at least some of the previously input data from the bidder's computer over at least one network for communicating data messages between said computers, including, but not limited to, the Internet."

**TERM #13**: *"communicating at least one message associated with said submitted bid to said issuer's computer over said at least one electronic network"* - As an initial matter, the majority of the terms used in this phrase have already been defined, as evidenced by the repeated use of the term "said", meaning, previously mentioned. Defendants' proposed claim construction requires that the bidder's computer do the communicating. And again, the intrinsic evidence to which they cite does not support such a construction. As plaintiff correctly points out, the patent contemplates that an auctioneer's computer could be used to coordinate the auction. Under such circumstances, the bid information could emanate from the auctioneer's computer. There is no support in the intrinsic record for importing the limitation proposed by defendants. As such, this phrase means: "a message

16

associated with the submitted bid is sent to the issuer's computer over at least one network for communicating data messages between said computers, including, but not limited to, the Internet."

**TERM #14**: *"and displaying, on said issuer's computer display, information associated with said bid including said computed interest cost value"* - Defendants' proposed construction is an admitted restatement of the argument they lost on summary judgment. We will not revisit that issue. Based on our earlier constructions, this phrase means: "showing information associated with the submitted bid, including the bid's previously computed interest cost value, on the issuer's computer display."

**TERM #15**: *"wherein at least one of the inputting step, the automatically computing step, the submitting step, the communicating step and the displaying step is performed using a web browser"* - The parties agree that no claim construction is needed on this phrase.

**CLAIM 14**:

**TERM #16**: *"the process of claim 1 wherein said process further includes accepting bid submissions only during a predetermined time period"* - The parties dispute the meaning of the word "predetermined" in this dependant claim. Defendants' argument that a time can be predetermined only if it is set before the auction commences is not convincing. Although it is likely that the deadline will be established prior to the start of the auction,

17

there is no such limitation in the claim. The only time that the patent specification speaks to something being predetermined, it is in the context of a conventional auction having a deadline of a fixed time on a predetermined date. That is the meaning we will assign to this term here. This phrase means: "allowing for transmission of bids to the issuer only up until a fixed time on a fixed sale date."

**CLAIM 20:**

**TERM #17:** *"observer's computer"* - In this dependent claim, although the parties purport to dispute the meaning of the term "observer's computer" it appears as though they are really once again revisiting the definition of "auction process", which this court already addressed on summary judgment, and will not address again. Defendants seek to distinguish their product by arguing that it does not perform the communicating and displaying steps while the auction is ongoing. However, we have already rejected imposing a temporal limitation on the term "auction process" in the context of the summary judgment motion. The disputed term means: "A computer used by a non-bidding party to view an electronic auction."

**CLAIM 31:**

**TERM #18:** *"In an electronic auction system including plural bidders' computers and an issuer's computer located remotely from*

*said plural bidders' computers, each of said plural bidders' computer including an associated input device and a display..."* - The parties agree that there is no substantive difference between the constructions applicable to this preamble and the preamble to Claim 1, which the court has previously construed.   This claim merely changes the "at least one bidder's computer" of Claim 1, to "plural bidders' computers".    The parties do not dispute that "plural bidders" means more than one bidder.    Therefore, the constructions given to like terms in the context of Claim 1 will apply here also; see discussion of TERM #1-9.

**TERM #19**: *"inputting data associated with at least one bid for fixed income financial instruments via said associated input device"* - See discussion of TERM #10.  We have already rejected defendants' arguments that this phrase should be construed to require that data be defined as only "information necessary to calculate an interest cost value" and that such data be stored on the bidder's computer.  This phrase means: "putting information, in a form suitable for processing by a computer, associated with a bid to buy a fixed income financial instrument into a computer via any input device used to prepare or submit bids."

**TERM #20**: *"automatically computing at least one interest cost value based at least in part on said inputted data.."* - See discussion of TERM #11.  We have already rejected defendants' argument that this "automatic computing" must take place on the

bidder's computer.  This phrase means: "calculating, without further action by the user, an interest cost value, representing borrowing cost associated with a fixed income financial instrument, based at least in part on the information put into a bidder's computer in the previous step."

**TERM #21**: *"ordering the interest cost values associated with said inputted data."* - Defendants claim that the ordering must occur prior to the "transmitting" step.  On this point, we agree with defendants.  Although we recognize that we need not require that the steps in a process occur in the same order that they appear in a claim, in this case, we find evidence from the claim language itself that the interest cost values can only be transmitted after they are put in some order.  The transmitting step refers back to "said interest cost values".  At least one interest cost value is "automatically computed" and interest cost values are then "order[ed]".  The first time that plural interest cost values are required is in the ordering step.  The transmitting step speaks to previously mentioned plural interest cost values.  These values must come from the ordering step.  For this reason, based on the structure of the claim, we agree with defendants on this issue. This phrase means: "placing the interest cost values in some order before transmission to the issuer's computer".

**TERM #22**: *"transmitting said interest cost values over said at least one electronic network to said issuer's computer"* - Defendants' proposed construction requires that the bidder's computer does the "transmitting". We have already dismissed defendants' argument that the bidder's computer must "communicate". See discussion of TERM # 13. Just as the bidder's computer need not do the "communicating" in Claim 1, the bidder's computer need not do the "transmitting" in this claim. This phrase means: "interest cost values are sent over at least one network for sending data between computers, including, but not limited to, the Internet, to the issuer's computer."

**TERM #23**: *"displaying said interest cost values on said issuer's computer's display"* - Defendants' proposed construction is a restatement of the argument they lost on summary judgment. We will not revisit that issue. See also discussion of TERM #14. Based on our earlier constructions, this phrase means: "showing interest cost values on the issuer's computer display."

**TERM #24**: *"wherein at least one of the inputting step, the automatically computing step, the ordering step, the transmitting step and the displaying step is performed using a web browser"* - The parties agree that no claim construction is needed on this phrase. See discussion of TERM #15.

**CLAIM 36**:

**TERM #25**: *""the process of claim 31 wherein said process* *further includes accepting bid submissions only during a* *predetermined time period"* - See discussion of TERM #16.  This phrase means: "allowing for transmission of bids to the issuer only up until a fixed time on a fixed sale date."

## IV.  CONCLUSION

The parties shall proceed in this case in accordance with the above constructions.

BY THE COURT,

cc: All Counsel of Record

22