IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

```
MUNIAUCTION, INC.              )
         Plaintiff,            )
                               )
     v.                        ) Civil Action No. 01-1003
                               )
THOMSON CORP. and             )
I-DEAL, LLC,                   )
         Defendants.           )
```

MEMORANDUM and ORDER

Gary L. Lancaster,                    July 30, 2007
District Judge

This is an action in patent infringement. On October 5, 2006, a jury found that defendants willfully infringed plaintiff's patent and awarded plaintiff more than $38 million in lost profit damages. In doing so, the jury rejected defendants' contention that the asserted patent claims were obvious, and therefore, invalid.

Following trial, the court met with counsel, which included new counsel for defendants, and encouraged the parties to resolve their dispute. To that end, the court referred the case to retired United States District Judge Donald E. Ziegler, Jr. for mediation, and stayed all further proceedings. We lifted the stay and set forth a briefing schedule for post-trial motions after attempts at compromise failed. All submissions have been received under that schedule, and the court is prepared to rule on the outstanding motions.

Pending before the court are the following:

(1) Plaintiff's Motion for a Permanent Injunction [doc. no. 322];

(2) Plaintiff's Motion to Tax Prejudgment Interest [doc. no. 327];

(3) Plaintiff's Motion for Enhanced Damages [doc. no. 332];

(4) Defendants' Motion for Judgment as a Matter of Law or for a New Trial [doc. no. 344]; and

(5) Defendants' Motion for a Hearing [doc. no. 382].

In addition, both parties have sought leave to file supplemental memoranda of law addressing the Supreme Court's recent decision in KSR Int'l Co. v. Teleflex Inc., ___ U.S. ___, 127 S.Ct. 1727 (2007) [doc. nos. 384 and 386].

## I.    FACTUAL BACKGROUND

The parties are familiar with the relevant facts. Previous opinions of this court contain detailed factual and technological summaries [see doc. nos. 114, 125, and 216]. Simply put, plaintiff owns a patent for auctioning municipal bonds using a web browser (the '099 Patent).  Plaintiff accuses defendants of infringing this patent by operating a competing Internet-based municipal bond auction system.

2

## II.   PENDING POST-TRIAL MOTIONS

### A.   Defendants' Motion for a Hearing

Defendants have asked the court to hold a hearing on the majority of the outstanding post-trial motions.   Plaintiff opposes that request.   The court does not require oral argument on any of these motions.   The issues are aptly presented in the parties' extensive briefs.   Oral argument would not assist the court in issuing its rulings. Therefore, we deny defendants' motion for a hearing [doc. no. 382].

### B.   Plaintiff's Motion for a Permanent Injunction

Plaintiff seeks a permanent injunction enjoining defendants' continued infringement of the '099 Patent. Defendants claim that plaintiff has not established that it is entitled to such relief under the appropriate legal standards.   We conclude that plaintiff has satisfied the requirements of the four-factor test, and is entitled to injunctive relief.   Therefore, we grant plaintiff's motion for a permanent injunction [doc. no. 322]

Recently, the Supreme Court rejected the Court of Appeals for the Federal Circuit's "general rule" that permanent injunctive relief should be automatically granted in patent cases upon a finding of infringement.   eBay Inc. v.

MercExchange, L.L.C., ___ U.S. ___, 126 S.Ct. 1837 (2006).
Instead, the Supreme Court reiterated that a district court
must determine, in accordance with traditional equitable
considerations, whether permanent injunctive relief is
appropriate based on the particular facts and circumstances
of the case before it.    Id. at 1839-41.   In doing so, a
district   court   must   not   categorically   grant,   nor
categorically deny, injunctive relief in patent cases.   Id.

Instead, the Supreme Court directed district courts to
apply the well-established four-factor test to requests for
injunctive relief in patent cases.   Id. at 1839.  Under that
test, in order to be awarded injunctive relief, a plaintiff
must demonstrate: (1) that it has suffered an irreparable
injury; (2) that remedies available at law, such as monetary
damages, are inadequate to compensate for that injury; (3)
that, considering the balance of hardships between plaintiff
and defendant, a remedy in equity is warranted; and (4) that
the public interest would not be disserved by a permanent
injunction.   Id.   Upon application of those factors to the
facts and circumstances of this case, we conclude that
permanent injunctive relief is warranted.

Plaintiff has satisfied the first two requirements of
the four part test.   Plaintiff and defendants are direct
competitors in a two-supplier market.   If plaintiff cannot

4

prevent its only competitor's continued infringement of its patent, the patent is of little value.

Moreover, the evidence at trial established, and the jury apparently found, that a sale to defendants is, by logical extension, a lost sale to plaintiff. Instead of buying plaintiff's patented system, customers are buying defendants' infringing system. Although this establishes monetary harm, in the form of lost profits, it harms plaintiff in other ways. The evidence at trial proved that plaintiff suffered permanent loss of market share as a result of defendants' infringing sales. This is a harm that cannot be compensated for solely with monetary damages, making equitable relief appropriate.

Apart from these damages, defendants' infringement has caused harm to plaintiff's patent rights. Even though we may not categorically enter an injunction solely because plaintiff's patent has been infringed, we may still consider this to be a relevant factor in our analysis under the four-factor test. The jury's finding that defendants have willfully infringed plaintiff's patent for six years supports our conclusion that plaintiff has suffered irreparable injury to its patent rights, for which there is no adequate remedy at law.

In addition, we find that plaintiff has suffered, and will continue to suffer, harm to its reputation for innovation as a result of defendants' infringement.  There is no dispute that plaintiff was the first to conduct municipal bond auctions over the Internet.  Plaintiff received media attention for doing so.  Defendants' infringement has usurped that attention, and, in turn, done harm to plaintiff's reputation as the leading innovator in this field. Recognition as the industry innovator is a tangible benefit afforded by a patent.  Defendants have taken that benefit away from plaintiff.  Such a harm is not compensable in damages, and is irreparable, making equitable relief appropriate.

We note that defendants apparently have every intention of continuing to offer their infringing system in the absence of an injunction.  Therefore, continued harm to plaintiff's patent rights, and continuous damages, both monetary and non-monetary, are guaranteed.  Finally, we reject defendants' argument that licensing activity negates any possibility of irreparable harm under the facts of this case.  Defendants' argument is both factually, and legally, flawed.  Factually, there was no evidence at trial of significant, relevant licensing activity.  Legally, licensing activity, even were it to have been proven at trial, does not negate a finding

that the patentee has suffered irreparable harm or that legal remedies are inadequate.

Considering all of these facts and circumstances, we find that plaintiff has satisfied the first two requirements of the four-factor test. We next must consider factor three, the balance of hardships.

We find that the balance of hardships favors plaintiff. In opposing plaintiff's request for equitable relief, defendants claim that they would suffer hardship, in the form of disruption of service, and financial burdens, were an injunction to issue. However, defendants' own witnesses at trial contradicted these statements. Defendants contended at trial that there were several cost-effective, and easily implemented, alternatives to using the infringing New Parity system. One option was to return to the Old Parity system, which would cost virtually nothing, and cause little interruption in service.

Another option would cost around $25,000 and take three weeks to develop. Defendants did not portray themselves at trial as a small, struggling company, for which $25,000 was a significant investment. Although some disruption in service could occur during the three week development period, we note that defendants' customers could use many prior art methods of bid submission during that short time period.

7

Therefore, defendants' claims that they would suffer hardship
in the form of disruption of currently scheduled auctions and
financial burdens were an injunction to issue ring hollow.
Rather, we find that defendants would suffer little, if any,
logistical and financial burden were an injunction to issue.

In comparison, without the injunction, plaintiff would
suffer continued encroachment on its patent rights, loss of
customers, price erosion, harm to reputation, and diminished
market share.  These burdens to plaintiff are real.  The jury
assigned significant value to some of them through its $38.4
million verdict.   Others are incapable of measurement in
monetary terms.  As such, the third factor, the balance of
harms, weighs in favor of plaintiff.

Finally, we find that the fourth factor favors entering
a permanent injunction.  In this case, the public interest
will not be disserved by entry of a permanent injunction.
Although defendants now allege that municipalities will be
deprived of much needed funding were the New Parity system to
be enjoined, again, this was not their position at trial.
Rather, as discussed above, at trial, defendants presented
numerous low-cost, easily executed replacements for the New
Parity system.  We find that, given this evidence, there is
little risk of harm to the public interest in this case.
Rather, we find that the public interest would be served by

8

enjoining defendants' continued, willful infringement of the '099 Patent, and by upholding the benefits of duly issued United States patents.

Upon consideration of each of the four factors as applied to the facts and circumstances of this case, we find that the equities weigh in favor of granting plaintiff permanent injunctive relief. Therefore, we grant plaintiff's motion for a permanent injunction [doc. no. 322].

### C.   Plaintiff's Motion to Tax Prejudgment Interest

Plaintiff has filed a motion seeking prejudgment interest in the amount of $7,660,621.00. Defendants agree that an award of prejudgment interest is warranted, but claim that the amount requested by plaintiff is excessive. There is no dispute that we can, and should, award prejudgment interest in this case. Allen Archery, Inc. v. Browning Mfg. Co., 898 F.2d 787, 791 (Fed. Cir. 1990). Prejudgment interest is awarded to make a plaintiff whole. It represents the time value of the money lost during the period of infringement. Skretvedt v. E.I. DuPont de Nemours, 372 F.3d 193, 207-08 (3d Cir.[1] 2004); see also Bio-Rad Lab., Inc. v.

---

[1]     The award of prejudgment interest is controlled by regional circuit law. Transmatic, Inc. v. Gulton Industries, Inc., 180 F.3d 1343, 1347-48 (Fed. Cir. 1999).

9

<u>Nicolet Instrument Corp.</u>, 807 F.2d 964, 969 (Fed. Cir. 1980).
The district court is charged with setting the appropriate
rate at which such interest should be awarded, and
determining the appropriate method of compounding. <u>Allen
Archery</u>, 898 F.2d at 791.

Plaintiff contends that interest on the $38.4 million
lost profit damages award should be calculated at the prime
rate, plus one percent, which is the actual rate at which
plaintiff borrowed money during the period of infringement.
Using this rate, interest in the amount of $7,660,621.00
would be awarded.

Defendants ask that we base any award of prejudgment
interest on either the T-Bill rate, or defendant Thomson's
short-term borrowing rate. Using these rates, defendants
propose prejudgment interest awards of either $3,228,904.00
or $3,754,175.00.

We find that plaintiff's proposed interest rate most
accurately reflects a full compensatory award to plaintiff.
The jury determined that defendants' infringement caused
plaintiff to lose $38.4 million in profits. Plaintiff had
to borrow money in order to account for that financial
shortfall. Plaintiff borrowed money at the prime rate, plus
one percent. Awarding plaintiff prejudgment interest at its
borrowing rate compensates plaintiff for what it actually

lost as a result of defendants' infringement. Had defendants not infringed, and plaintiff not been forced to borrow such money, plaintiff would not have incurred such interest costs over the last six years.

Defendants' proposed interest rates would not adequately compensate plaintiff. That the United States government borrowed money at a lower rate, or that Thomson could borrow money at a lower rate over the short term, does not determine the loss or harm to plaintiff over the last six years.

Although this interest award is significant, it is not a form of punishment to defendants. Rather, it represents the risk that defendants chose to bear over the past six years by operating an auction system accused of infringing an issued patent. Defendants could have designed around the '099 Patent, or paid for a license under the '099 Patent, and incurred the financial consequences of those choices at the time. Instead, defendants decided to continue their activities unabated. In making that choice, defendants assumed all financial risks related to that course of action.

Based on these considerations, we grant plaintiff's motion [doc. no. 327]. We award prejudgment interest on the $38,482,008.00 compensatory damages award at the prime rate, plus one percent weighted average interest rate, compounded yearly, over the period of infringement. Thus, we award

prejudgment interest in the amount of $7,660,621.00.

### D.    Plaintiff's Motion for Enhanced Damages

Plaintiff has filed a motion for enhanced damages based on the jury's finding of willfulness.  Plaintiff asks that we increase the damages award to $115.4, three times the amount of the jury's verdict, pursuant to 35 U.S.C.A. § 284. Although a finding of willful infringement authorizes the award of enhanced damages, it does not mandate such an award. Group One, Ltd. v. Hallmark Cards, Inc., 407 F.3d 1297, 1308 (Fed. Cir. 2005).  Instead, we must look to the totality of the circumstances of the case, considering both aggravating and mitigating facts, before reaching a determination of whether, and to what extent, we should exercise our discretion and award enhanced damages.  Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 383 F.3d 1337, 1342-43 (Fed. Cir. 2004); Jurgens v. CBK, Ltd., 80 F.3d 1566, 1570 (Fed. Cir. 1996).

The Court of Appeals for the Federal Circuit has provided district courts with several factors to consider when determining whether damages should be enhanced.  They include: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the

12

scope of the patent and formed a good-faith belief that the patent was invalid or not infringed; (3) the infringer's behavior as a party to the litigation; (4) defendant's size and financial condition; (5) closeness of the case; (6) duration of defendant's misconduct; (7) remedial action by the defendant; (8) defendant's motivation for harm; and (9) whether defendant attempted to conceal its misconduct. Liquid Dynamics Corp. v. Vaughan Co., Inc., 449 F.3d 1209, 1225 (Fed. Cir. 2006); Read Corp. v. Portec, Inc., 970 F.2d 816, 826-27 (Fed. Cir. 1992) (superseded on other grounds as recognized in Hoechst Celanese Corp. v. BP Chemicals Ltd., 78 F.3d 1575, 1578 (Fed. Cir. 1996)).  An evaluation of the above factors assists us in deciding whether to exercise our discretion and award enhanced damages.  Upon consideration of each of these factors, we find it appropriate to enhance the jury's damages award in this case, although not to the extent requested by plaintiff.

Deliberate Copying - Plaintiff introduced evidence of numerous visits to its website, and statistical similarities between New Parity and the claims of the '099 Patent in order to prove copying at trial.  Although both pieces of evidence could have innocuous explanations, each could also reveal sinister motives.  The jury's finding of willful infringement could indicate that the jury believed that plaintiff had

13

proven deliberate copying.  On balance, this factor weighs in favor of enhancing damages.

Good Faith Belief - Defendants reiterate that they had a good faith belief that they did not infringe the '099 Patent because they obtained an opinion letter from counsel. There is no question that an opinion letter is typically used to shield an accused infringer from a verdict of willful infringement.  There is no dispute that defendants had an opinion letter in this case.  There is also no dispute that the jury entered a verdict of willful infringement despite the letter.  Therefore, the jury found that the opinion letter was deficient in some way.  We will not contradict the jury's conclusion.  This factor weighs in favor of enhancing damages.

Litigation Behavior - Plaintiff correctly notes that defendants violated this court's instructions during, and generally abused, the claim construction process.  Plaintiff also contends that defendants acted improperly during trial. While we agree with the first observation, we do not agree with the second.  We do not consider defendants' trial tactics to have crossed the line into egregious conduct. Counsel had a duty to zealously represent his clients. Patent trials are expensive, lengthy, and high risk endeavors.  We cannot fault defendants, and their counsel,

14

for their aggressive conduct at trial.  We do, however, fault defendants for abusing the claim construction process, and exacerbating that burden, both on plaintiff, and on the court.  Therefore, this factor, weighs somewhat in favor of enhancing damages.

Size and Financial Condition - Although defendants now attempt to portray themselves as small companies, with insignificant earnings from the infringing system, the fact remains that Thomson, a named defendant, and one-time part owner of defendant iDeal, is a billion dollar company. Plaintiff is dwarfed in comparison.  iDeal is not an insignificant company.  These facts, combined with defendants' disingenuous post-trial claims that they are small, financially strapped companies, weigh in favor of enhancing damages.

Closeness of the Case - This was not a particularly close case on the issue of infringement or invalidity. Although the case was hard fought, there was little question regarding infringement after the court issued its claim construction.  The question regarding obviousness was not much closer given the differences between what was claimed in the '099 Patent, and what the Old Parity system did. Defendants cannot dispute that the Patent Examiner compared the Old Parity system to the claimed invention and identified

15

significant differences between the two. This factor weighs
in favor of enhancing damages.

Duration of Infringement - There is no dispute regarding
this factor. Defendants started infringing the '099 Patent
the day that it was issued more than six years ago, and
continue to do so today. Defendants continue to infringe
despite their admissions at trial that a design around was a
quick and cheap solution. Defendants apparently intend to
continue infringing in the absence of an injunction. This
factor weighs in favor of enhancing damages.

Remedial Action - There is no dispute regarding this
factor either. Defendants have taken no remedial action.
While it may be true that defendants have issues that they
intend to pursue on appeal, we are not directed to evaluate
defendants' appellate position. Instead, we are told to
determine whether any remedial actions have been taken.
Defendants have taken none. Therefore, this factor weighs in
favor of enhancing damages.

Motivation to Harm - Plaintiff presented evidence at
trial that defendants priced their product at zero in order
to harm plaintiff's business. Of course, defendants dispute
that this was their motivation. In our view, plaintiff's
internal documents discussing this exact motivation are
telling. Therefore, this factor weighs in favor of enhancing

16

damages.

Concealing Misconduct - Plaintiff alleges that defendants attempted to conceal their identities when visiting plaintiff's website, and that, therefore, this factor weighs in favor of enhancement. We disagree with plaintiff. The domain names being used to access plaintiff's website contained Thomson Financial Network's initials. There was no attempt to access the website from another domain name, or to change the initials. We find that defendants made no attempt to hide their conduct. This factor weighs against enhancing damages.

We must also consider that defendants presented no mitigating circumstances, other than again proclaiming that they do not infringe, that they are protected by their opinion letter, and that the '099 Patent is invalid. These arguments have now all been rejected by the jury, and defendants' continued insistence on advancing them does not rise to the level of a mitigating circumstance.

In light of the jury's finding of willfulness, our own examination of the Read factors, and the absence of any relevant mitigating circumstances, we conclude that it is appropriate to exercise our discretion and award enhanced damages. Thus, we grant plaintiff's motion for enhanced damages [doc. no. 332].

We must next determine the appropriate factor by which to multiply the jury's $38.4 million verdict. In doing so, we may consider the size of the damages award. <u>Riles v. Shell Exploration and Production Co.</u>, 298 F.3d 1302, 1314 (Fed. Cir. 2002). Here, the jury awarded the maximum amount of damages requested by plaintiff. The award is significant, in its own right. However, we do not consider the compensatory damages award to evidence the jury's desire to punish defendants. Defendants insist that the $38.4 million verdict is itself punitive because they made only $3.5 million in revenues from New Parity. But, as defendants well know, lost profit damages are not based on the income earned by the infringer. Instead, such damages are representative of the profits lost by the patent holder. The jury accepted plaintiff's theories as to what it lost due to defendants' infringement.

Although not punitive, the jury verdict is undeniably substantial. However, with eight out of the nine <u>Read</u> factors weighing in favor of enhancement, a jury verdict of willful infringement, and no mitigating circumstances, a significant enhancement is still warranted. Therefore, we will double the jury's damages award. Thus, we increase the jury's damages award from $38,482,088.00 to $76,964,016.00.

18

E.   Defendants' Motion for Judgment as a
     Matter of Law or for a New Trial

Defendants have renewed the motion for judgment as a
matter of law that they made at trial.   Fed. R. Civ. P.
50(b).   They have also, in the alternative, moved for a new
trial under Federal Rule of Civil Procedure 59.   Defendants
challenge four categories of the jury's verdict, and/or this
court's rulings: (1) damages; (2) obviousness; (3) joint
infringement; and (4) willfulness.   We see no error in our
prior rulings or instructions, or in the jury's verdict, and
therefore, deny the motion [doc. no. 344].

1.   Applicable Legal Standards

(a)   Motion for Judgment as a Matter of Law

Whenever a motion for a judgment as a matter of law
under Rule 50(a)(1) is not granted at trial, the moving party
may renew the motion after judgment has been entered.
Fed.R.Civ.P. 50(b).   A motion for judgment as a matter of law
will be granted only if, "viewing the evidence in the light
most favorable to the nonmovant and giving it the advantage
of every fair and reasonable inference, there is insufficient
evidence from which a jury reasonably could" reach its
verdict.   Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153,
1166 (3d Cir. 1993).   In determining whether the evidence is
sufficient to sustain the jury's verdict, the court cannot

19

reweigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000); Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 190 (3d Cir. 1992).

### (b)   Motion for a New Trial

A moving party may be granted a new trial even when the court determines that entry of judgment as a matter of law in that party's favor is not appropriate. Roebuck v. Drexel Univ., 852 F.2d 715, 735-36 (3d Cir. 1988). However, a new trial should be granted only when the verdict is contrary to the great weight of the evidence, or when a miscarriage of justice would result if the verdict were to stand. Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1076 (3d Cir. 1996). A new trial because the verdict is against the great weight of the evidence should be granted "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks the conscience." Williamson v. Consolidated Rail Corp., 926 F.2d 1344, 1353 (3d Cir. 1991).

2.   Discussion

Defendants object to four categories of the court's rulings and the jury's verdict.   We will address each category separately and determine, for each, whether either judgment as a matter of law, or a new trial, is warranted.

(a)   Damages

Defendants claim that the jury's damages award was not based on sufficient evidence.   Defendants contend that the jury lacked a reasonable basis on which to award any damages based on Parity-Optional auctions.   Defendants further argue that there is not a legally sufficient evidentiary basis for the jury to have awarded lost profit damages because: (1) there were commercially acceptable non-infringing alternatives in the marketplace; (2) there was a large price disparity between the parties' products; and (3) the evidence is insufficient to support a price erosion claim.   As an alternative to these arguments, defendants ask for a new trial on the issue of damages.

As an initial matter, defendants overstate the value of their Parity-Optional evidence, which is the basis of their first objection to the damages award.   Defendants' witness testified at trial that she had performed a calculation the prior evening proving that only 11% of defendants' auctions

21

were Parity-Exclusive (*i.e.*, permitted only electronic bid submission). Other witnesses, including plaintiff's expert, acknowledged the obvious fact that systems in which bids were submitted in person, or by facsimile, were not "electronic auction systems," as is required by the claims of the '099 Patent. From this, defendants argue that all Parity-Optional auctions were non-infringing.

However, defendants' syllogism contains a fatal flaw. Defendants' witness also testified that she had no way of knowing what method, or methods, of bid submission were actually used in Parity-Optional auctions. Instead, defendants asked the jury to assume that all Parity-Optional auctions used non-electronic means of bid submission, without providing the jury with evidence of that fact. This is far from dispositive evidence proving that all Parity-Optional auctions were non-infringing. As such, the jury was free to disregard, or discredit, the testimony on that basis. The jury also was permitted to consider the fact that this evidence had been created during the trial and was, on its face, incomplete. Moreover, it was the jury's job to assess the demeanor and credibility of defendants' witness in deciding whether to accept or reject her testimony.

Apart from accounting for these defects in defendants' evidence, the jury's verdict also is in accordance with "the

rule that 'an accused product that sometimes, but not always, embodies a claimed method nevertheless infringes.'" Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1311 (Fed. Cir. 2005) (citing Hilgraeve Corp. v. Symantec Corp., 265 F.3d 1336 (Fed. Cir. 2001) and Bell Communications Research, Inc.v. Vitalink Communications Corp, 55 F.3d 615 (Fed. Cir. 1995)). Therefore, we find no error in the fact that the jury's damages award accounted for so-called Parity-Optional auctions.

We otherwise uphold the jury's lost profit damages award. The verdict was supported by sufficient evidence. Although defendants allege that there were acceptable non-infringing alternatives in the marketplace, the jury apparently disagreed. Defendants contended that paper-based systems were a substitute for electronic systems. However, there was evidence demonstrating that non-electronic bid systems did not provide the benefits of electronic bid systems, and were not acceptable substitutes. See Kalman v. Berlyn Corp., 914 F.2d 1473, 1484-85 (Fed. Cir. 1990). This was a factual dispute that the jury was called on to resolve. Minnesota Mining and Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc., 976 F.2d 1559, 1577-78 (Fed. Cir. 1992). The jury was within reason to find that Old Parity, and other non-electronic bid submission systems, were not alternatives

23

to plaintiff's electronic system, with its added features and benefits.

Moreover, plaintiff presented sufficient economic evidence to support all aspects of its lost profits damages theory, contrary to defendants' claims. In his market analysis, plaintiff's expert recognized that some portion of defendants' customers would not move their business to plaintiff. Plaintiff offered an explanation to the jury as to why there was such a drastic price disparity between plaintiff's system and defendants' system. Plaintiff presented evidence of a two supplier market. Of course, defendants presented counter-evidence to the jury in support of their version of these facts. That the jury was convinced by plaintiff's evidence, rather than defendants', is not error.

Under those circumstances, we cannot say that the jury's award of lost profit damages was not supported by sufficient evidence, was against the great weight of the evidence, or resulted in a miscarriage of justice. The damages award was admittedly large. However, there was sufficient evidence supporting it. Therefore, we deny defendants' motion for judgment as a matter of law, and for a new trial, on this ground. There is no basis on which to enter a remittitur of damages.

(b)   <u>Obviousness</u>[2]

Defendants contend that they are entitled to judgment as a matter of law, or a new trial, on their defense and counterclaim of patent invalidity.  According to defendants, all of the asserted claims of the '099 Patent are invalid because they are obvious in light of the Old Parity electronic bid submission system.  Defendants argue that Old Parity performed all of the functions of the asserted claims and that one of ordinary skill in the art could combine Old Parity with a web browser to arrive at the patented invention.

Obviousness must be proven by clear and convincing evidence.  <u>Structural Rubber Products Co. v. Park Rubber Co.</u>, 749 F.2d 707, 714 (Fed. Cir. 1984).  The ultimate judgment of obviousness is a legal question, although based on factual determinations.[3]  <u>Graham v. John Deere Co.</u>, 383 U.S. 1, 17 (1966).  In this case, each party submitted proposed jury instructions on the issue of obviousness, which were

---

[2]   We have considered the supplemental memoranda of law submitted by each party in ruling on this issue. Therefore, plaintiff's and defendants' motions for leave to file supplemental memoranda of law [doc. nos. 384 and 386] are granted.

[3]   Where the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in dispute, the obviousness question can be decided as a matter of law.  <u>KSR Int'l Co. v. Teleflex Inc.</u>, ___ U.S. ___, 127 S.Ct. 1727, 1745-46 (2007).

25

discussed at length at the charge conferences. In addition, the parties submitted nearly identical proposed jury verdict forms. Each form asked the jury to check off, claim-by-claim, whether the asserted claim was obvious, or not obvious. The court adopted the proposed format. We submitted the ultimate question of obviousness to the jury, as is customary.

The jury in this case found that each of the asserted claims of the '099 Patent was not obvious. We have reviewed the evidence, and considered the recent Supreme Court case addressing the appropriate standards to apply to an obviousness determination, and find no error, or miscarriage of justice, in the jury's verdict.

A ruling on an obviousness defense or counterclaim is made after considering: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; and (3) the level of ordinary skill in the pertinent art. Graham, 383 U.S. at 17-18. Evidence of secondary considerations may be used to shed light on the question of obviousness. Id. Until recently, when an invention was allegedly made obvious by the combination of two, or more, pieces of prior art, a court, or jury, was required to apply the "teaching, suggestion, or motivation" test. Under that test, a patent claim could be found obvious

only if there was some motivation or suggestion to combine the pieces of prior art in the prior art, the nature of the problem, or the knowledge of a person having ordinary skill in the art.  KSR, 127 S.Ct. at 1734.

However, in KSR the Supreme Court unanimously found that the teaching, suggestion, or motivation test was "incompatible with our precedents" when applied as a rigid and mandatory formula.  Id. at 1741.  However, recognizing that most modern inventions "rely upon building blocks long since uncovered," the Court still found it "important to identify a reason that would have prompted a person of ordinary skill in the relevant art to combine the elements in the way the claimed new invention does."  Id.  Generally in determining obviousness, the Court directed us to ask whether the invention was a result of innovation, or of ordinary skill and common sense, because "[g]ranting patent protection to advances that would occur in the ordinary course without real innovation retards progress..." Id. at 1741, 1746.

With those directives in mind, we consider the jury's verdict of non-obviousness in this case.  There is no dispute that the level of ordinary skill in the art was a degree in computer science, plus a year of work experience in the financial industry.  There is also no dispute as to the content of the prior art or of the scope of the patent's

27

claims.  Defendants rely on Old Parity[4], combined with prior
patents that taught, generally, the use of web browsers for
auctions, and industry speeches and internal documents
referring to the concept of auctioning municipal bonds over
the Internet, to support their argument that the asserted
claims of the '099 Patent are obvious.  According to
defendants, Old Parity performed all of the operations found
in the asserted claims, except use of a web browser.
Therefore, defendants contend that the '099 Patent
accomplished nothing more than moving Old Parity onto the
Internet.  That is not what the record reflects.

Plaintiff presented ample evidence to defeat defendants'
attempts to show by clear and convincing evidence that there
were no differences between Old Parity and the claims of the
'099 Patent.  In fact, as this court had already recognized,
the Patent Office determined that Old Parity, at least, did
not perform the step of automatically computing at least one
interest cost value.  The jury was also presented with
evidence that Old Parity did not confirm bid parameters, as
was claimed in the '099 Patent.  Defendants did not contend
at trial that those claim elements appeared in any other
piece of prior art.  Nor did they argue that the elements

---

[4]    We note that the Examiner was aware of, and explicitly
gave consideration to, Old Parity as a key piece of
prior art.

were otherwise obvious.  Without such evidence, the jury
could only reasonably have found that Old Parity did not
contain all of the elements found in the asserted claims of
the '099 Patent.  As such, the obviousness analysis ends
there.  The jury need not have applied any version, whether
correct or incorrect under KSR, of the teaching, suggestion,
or motivation test.  Therefore, there is no error in the
jury's verdict, nor need for a new trial on the issue of
obviousness.

We further note that plaintiff presented sufficient
evidence of secondary considerations to shed light on the
circumstances surrounding the origin of the patented subject
matter.  Plaintiff presented evidence of skepticism, legally
appropriate praise, copying, and commercial success.  This
evidence supports the jury's conclusion that the claims of
the '099 Patent were not obvious.

Given all of these considerations, we see no
insufficiency, error, or injustice, in the jury's finding
that defendants failed to prove by clear and convincing
evidence that the claims of '099 Patent were obvious.  We
will neither enter judgment as a matter of law, nor grant a
new trial, on the issue of obviousness.

(c)  <u>Joint Infringement</u>

Defendants claim that judgment as a matter of law, or a new trial, is warranted on the issue of infringement because the jury instructions regarding joint infringement were erroneous.  Defendants argue that the instructions given allowed the jury to find infringement on an insufficient legal basis.

We find no error on the instructions given to the jury on the issue of infringement.  As an initial matter, we note that the issue of infringement by related parties was strongly contested throughout this case, including at trial. The parties were given ample opportunity to present their positions at the charge conference.  The court ruled on the issue at that time.

The jury was instructed in accordance with controlling precedent from the Court of Appeals for the Federal Circuit. <u>On Demand Machine Corp. v. Ingram Indus., Inc.</u>, 442 F.3d 1331, 1344-45 (Fed. Cir. 2005).  That precedent does not require that "direct control" be proven before infringement by related parties can be found, as defendants allege.  There was sufficient evidence for the jury to have found the required connection between defendants, the bidders to whom they charge a fee for their services, and the issuers for whom they facilitate auctions, under the appropriate legal

standards as set forth in the instructions.   There is no
error in the instruction, or verdict, regarding joint
infringement.[5]  Neither judgment as a matter of law, nor a
new trial, is warranted on this basis.


                    (d)   <u>Willfulness</u>

        Finally, defendants attack the jury's finding that they
willfully infringed the '099 Patent.  Defendants allege that
the jury lacked any reasonable basis on which to find that
defendants did not rely in good faith on the advice of
counsel.   Further, defendants contend that the evidence of
copying presented by plaintiff at trial was insufficient to
sustain the jury's willfulness finding.

        After reviewing the evidence, however, the court
concludes that the evidence, and reasonable inferences drawn
therefrom, support the jury's finding.   The fact that
defendants presented an opinion letter to the jury is not
determinative of the willfulness question, as defendants
contend.   Plaintiff presented evidence that drew the value
of the opinion into question.  Defendants presented evidence

---

[5]     We note that plaintiff voluntarily dropped its claims
        of indirect infringement at trial. Therefore, the court
        did not instruct the jury on those theories.
        Defendants' assertion that the court improperly
        included instructions regarding inducing infringement
        in its jury instructions is unfounded.

31

that the opinion letter was top notch, and relied upon in good faith. The jury was called upon to decide whether the letter provided defendants with a reasonable, good faith belief that the patent was invalid or not infringed. That the jury agreed with plaintiff, and not defendants, is not error. The court instructed the jury on how it was to make its willfulness determination under the law. In addition, we informed the jury that counsel's arguments were not evidence. The jury performed its function and made a determination as to whether the opinion letter protected defendants in this case. There is no legal error inherent in the fact that the jury sided with plaintiff.

Likewise, the jury was free to interpret the evidence of copying as it saw fit. Just as defendants could present evidence to the jury showing that they prepared New Parity based only on Old Parity, plaintiff could present evidence to the jury showing that New Parity was copied from its product. It was up to the jury to decide whom to believe.

We cannot say that there was insufficient evidence to support the jury's willfulness verdict, or that it was contrary to the great weight of the evidence or resulted in a miscarriage of justice. Therefore, we deny defendants' motion for judgment as a matter of law, and for a new trial, on this basis as well.

32

### 3.   Summary

Defendants have objected to this court's rulings, and the jury's verdict, on the issues of damages, obviousness, joint infringement, and willfulness.  The jury's verdict on each issue was supported by sufficient evidence and does not result in a miscarriage of justice.  Therefore, there is no basis for the court to enter judgment as a matter of law, or to order a new trial.  Further, we have found no error in any of the rulings made or instructions given by this court.

### III. CONCLUSION

The court has resolved all pending post-trial motions. We will enter a permanent injunction against defendants' continued infringement of the '099 Patent.  We will modify the damages award to account for an enhancement of damages and prejudgment interest.  Neither judgment as a matter of law, nor a new trial, is warranted.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MUNIAUCTION, INC.          )
     Plaintiff,          )
                 )
     v.          )   Civil Action No.   01-1003
                 )
THOMSON CORP. and          )
I-DEAL, LLC,          )
     Defendants.          )

## ORDER

AND NOW, this 30th day of July, 2007, IT IS HEREBY ORDERED as follows:

Defendants' motion for a hearing is DENIED [doc. no. 382];

Plaintiff's motion for leave to file a supplemental memorandum of law is GRANTED [doc. no. 384];

Defendants' motion for leave to file a supplemental memorandum of law is GRANTED [doc. no. 386];

Plaintiff's motion for a permanent injunction is GRANTED [doc. no. 322]. The attached Order for Permanent Injunction is hereby entered in this case;

Plaintiff's motion to tax prejudgment interest is GRANTED [doc. no. 327]. Plaintiff is awarded $7,660,621.00 in prejudgment interest;

34

Plaintiff's motion for enhanced damages is GRANTED [doc. no. 332].  We enter judgment in the amount of $76,964,016.00;

Defendants' motion for judgment as a matter of law, or for a new trial, is DENIED [doc. no. 344].

BY THE COURT,

_____, J.

cc: All Counsel of Record

35